IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| ANTHONY FLEMING, | * |
| Petitioner, | * |
| v. | CIVIL NO.: WDQ-13-2383 |
| | * CRIMINAL NO.: WDQ-08-0086 |
| UNITED STATES OF AMERICA, | * |
| Respondent. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

A jury found Anthony Fleming guilty of participating in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d), conspiracy to distribute narcotics in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1).  Pending are Fleming's *pro se* motion to vacate under 28 U.S.C. § 2255 and three motions to amend.  No hearing is necessary.  *See* Rule 8 of the *Rules Governing § 2255 Proceedings*.  For the following reasons, Fleming's first motion to amend will be granted and the second motion to amend will be denied as moot; the other motions will be denied.

I. Background[1]

Tree Top Piru ("TTP") is a subset of the Los Angeles Bloods which developed in Maryland prisons. *United States v. Mouzone*, 687 F.3d 207, 212 (4th Cir. 2012). "[M]embers of the gang are expected to 'put in work' to advance within the gang. 'Putting in work' includes earning revenue for the gang and entails illegal activities such as robbery, distribution of drugs, and killing." *Id.* On February 21, 2008, a federal grand jury indicted Fleming and other alleged TTP members. ECF No. 1. The indictment charged Fleming with three offenses: conspiracy to participate in a racketeering enterprise (RICO conspiracy), conspiracy to distribute and possession with the intent to distribute fifty grams or more of cocaine base, and distribution of and possession with intent to distribute fifty grams or more of cocaine base. *Id.*

In April 2010, the Court held an eight-day jury trial for Fleming and Tavon Mouzone, another alleged TTP member. *See* ECF Nos. 931-51. During trial, "[t]he government introduced evidence that Fleming and Mouzone were members of TTP and participated in gang activities in the Essex area of Baltimore

---

[1] The facts are from the parties' filings and exhibits (ECF Nos. 1352, 1354, 1364, 1366, 1397, 1405), and the Fourth Circuit's opinion on Fleming's appeal (*United States v. Mouzone*, 687 F.3d 207 (4th Cir. 2012)).

County, Maryland," including "their participation in two murders." *Mouzone*, 687 F.3d at 212-13.

The government also presented evidence about Fleming's arrest. When "[p]olice arrested Fleming on April 24, 2007, [] Baltimore Police Detective Zachary Wein observed a plastic baggie with a white rock substance protruding from a cell phone case on Fleming's hip. Seizure of the cell phone case revealed that it contained two plastic bags of [suspected] crack cocaine." *Mouzone*, 687 F.3d at 213. Police sent the bags and phone to forensic chemist Aisha Larkins for analysis. *Id*. at 214. "Larkins reported that the first package of cocaine base weighed 55.45 grams and that the second package weighed 19.08 grams . . . ." *Id*. She also weighed the phone at 40.30 grams. *See* ECF No. 1352-1 at 2.

After Larkins completed her analysis, the government learned that she would be unavailable for trial. *Mouzone*, 687 F.3d at 214. To avoid a Confrontation Clause violation, the government "secured another chemist, Marta Iwashko, to perform a second analysis." *Id*. In Iwashko's analysis, the first bag of drugs weighed 46.26 grams, and the second package weighed 15.99 grams. *Id*. The phone weighed 40.50 grams. *See* ECF No. 1352-1 at 3. "Because Iwashko recorded the results of her analysis on the same ledger that Larkins used, the drug analysis report submitted into evidence at trial included both Iwashko's and

3

Larkins's findings." *Mouzone*, 687 F.3d at 214. "When questioned at trial by the government about the discordant [drug] weight calculations, Iwashko explained that the cocaine base likely was 'a clumpy substance [and] slightly wet' when initially submitted for analysis, but that '[t]wo and a half years later, when [she] analyzed it, . . . it was a lot [drier],' and thus, 'the net weight [was] lighter.'" *Id.*

On April 16, 2010, the jury found Fleming guilty of all charges. ECF No. 964. The verdict sheet also contained factual findings that (1) the purpose of the RICO conspiracy was to distribute crack cocaine and marijuana and to commit robberies; (2) the conspiracy to distribute cocaine included 50 grams or more of cocaine base; and (3) Fleming intended to distribute 50 grams or more of cocaine base. *See id.*

On July 12, 2010, the Court sentenced Fleming. Before trial, the government gave notice that it would seek an enhanced sentence under 21 U.S.C. § 851. ECF No. 907. "At sentencing, the [] [C]ourt increased Fleming's offense level from 19 to 43 because it determined that "more likely than not[,] . . . Mr. Fleming killed [Lamont] Jackson and that [the] murder [was] relevant and related conduct in setting the guidelines range." *Mouzone*, 687 F.3d at 214. The Court sentenced Fleming to 240 months imprisonment for the RICO conspiracy, life in prison for

4

the drug conspiracy, and life in prison for the possession with intent to distribute offense. ECF No. 1065.

On July 20, 2010, Fleming filed notice of appeal. ECF No. 1075. On appeal, Fleming argued, among other claims, that submitting the drug analysis report containing both sets of findings violated the Confrontation Clause, the indictment improperly joined the drug offenses and the RICO conspiracy, and the Court erred in considering the murder as relevant conduct at sentencing. *See Mouzone*, 687 F.3d at 207. The Fourth Circuit found no error and affirmed Fleming's conviction and sentence. *Id.* at 212. Fleming filed a petition for *certiorari* with the Supreme Court, which was denied on January 7, 2013. *Fleming v. United States*, 133 S. Ct. 899 (2013).

On August 15, 2013, Fleming filed a motion to vacate under 28 U.S.C. § 2255. ECF No. 1352. On August 27, 2013, Fleming filed a motion to amend in order to add a claim under *Alleyne v. United States*, 133 S. Ct. 2151 (2013). ECF No. 1354. On October 17, 2013, the government responded. ECF No. 1364. On October 18, 2013, Fleming filed another motion to amend addressing his *Alleyne* claim. ECF No. 1366. On May 15, 2014, Fleming filed a third motion to amend. ECF No. 1397. On June 10, 2014, the government opposed the third motion to amend. ECF No. 1405.

II. Analysis

    A. Motions to Amend

"A motion by a federal prisoner for postconviction relief under 28 U.S.C. § 2255 is subject to a one-year time limitation that generally runs from 'the date on which the judgment of conviction becomes final.'"  *Clay v. United States*, 537 U.S. 522, 524 (2003) (quoting 28 U.S.C. § 2255).  Fleming's judgment of conviction became final on January 7, 2013, when the Supreme Court denied *certiorari*.  *See id.* at 525, 532.

Fleming sought to add his claim under *Alleyne* within the limitations period, and the government does not oppose the amendment.  *See* ECF No. 1364 at 1, n.1.  Accordingly, the Court will grant Fleming's motion to amend and will consider this claim on its merits.[2]  However, Fleming filed his third motion to amend five months outside the limitations period.  Accordingly, the Court will deny the third motion to amend.[3]

---

[2] Because the Court will grant the first motion to amend, the second motion to amend--which seeks to add the same claim--will be denied as moot.

[3] Even if this amendment had been filed within the limitations period, the Court would still dismiss the claim.  Fleming sought to argue that Jackson's murder was not related conduct to increase his sentence.  ECF No. 1397 at 1.  Under § 2255, Fleming cannot raise a claim which has been decided on direct appeal.  *See United States v. Roane*, 378 F.3d 382, 397 (4th Cir. 2004).

B. Ineffective Assistance of Counsel

Fleming asserts that his counsel was ineffective by failing to challenge the two drug bags and cell phone seized at his arrest. ECF No. 1352-1 at 2-4. Fleming argues that the weight differences between the two reports called the evidence into question, and someone may have tampered with the evidence. *Id.* Fleming contends that counsel should have attacked these inconsistencies on cross examination.[4] *Id.*

The Sixth Amendment guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove ineffective assistance, Fleming must show: (1) counsel's performance was deficient and (2) the deficiency prejudiced his defense. *Id.* at 687.

To show deficient performance, Fleming must establish that counsel made errors so serious that the "representation fell below an objective standard of reasonableness." *Id.* at 688. There is "a strong presumption that counsel's conduct was within

---

[4] Fleming's memorandum in support only discusses his counsel's deficiencies on cross examination. *See* ECF No. 1352-1. However, in his § 2255 form, Fleming states that counsel erred by not "suppressing and challenging" the evidence because of possible tampering. *See* ECF No. 1352 at 5. To the extent that Fleming is arguing that his counsel failed to object to the introduction of the evidence, this claim also fails. Questions about the chain of custody go to the weight of the evidence and not its admissibility, so any objection by counsel would have been futile. *See United States v. Vidacak*, 553 F.3d 344, 350-51 (4th Cir. 2009). Further, for the reasons discussed *infra*, Fleming would also have been unable to show prejudice.

a wide range of reasonably professional conduct." *Kratsas v. United States*, 102 F. Supp. 2d 320, 322 (D. Md. 2000) *aff'd*, 9 F. App'x 107 (4th Cir. 2001) (*citing id.* at 688-89). To overcome this presumption, Fleming must show "that the challenged action [did not] amount[] to trial strategy." *Luchenburg v. Smith*, 79 F.3d 388, 392 (4th Cir. 1996). To show prejudice, he must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the plea context, this means that Fleming must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

The content of cross-examination is a tactical decision "entrusted to the judgment of the lawyer." *See United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998). Courts should not engage in analyses that would "constitute a grading of the quality of counsel's cross-examination." *Hunt v. Nuth*, 57 F.3d 1327, 1333 (4th Cir. 1995).

In this case, there were slight discrepancies between the weight of the drugs when they were first tested and when they were retested two years later. The government recognized the disparity and had Iwashko explain the difference at trial. Defense counsel made a tactical decision to not attack this

8

inconsistency any further; not only was the information already before the jury, but such a challenge would not have bolstered the defense theory.[5] *See Huffington v. Nuth*, 140 F.3d 572, 582 (4th Cir. 1998) ("In counsel's view, an attack on the reliability of the bullet composition testimony did not fit that strategy. This tactical decision, viewed from the vantage point of trial and not from hindsight, does not fall outside the wide range of reasonable discretion afforded to counsel.").

Even if Fleming could show counsel's deficient performance, he has failed to show any prejudice as a result of counsel's decision not to attack the weight discrepancies. As the Fourth Circuit stated on appeal:

> Iwashko conducted an independent analysis of the seized drugs, and her weight determinations, albeit less than Larkins's, *were well above the fifty gram threshold of which Fleming was convicted*. Furthermore, because she conducted an analysis free from reliance on Larkins's research, she adequately answered the government's questions regarding her research and any evident discrepancies.
>
> We find no merit to Fleming's contention that he was unable to cross-examine Iwashko in a meaningful manner. The record reveals that defense counsel focused its cross-examination on distinguishing Larkins's findings from Iwashko's and on clarifying that the report contained data for which Iwashko was not responsible. Iwashko answered all of these questions ably, and she made clear the independence of her findings and made no attempt to vouch for those of Larkins.

---

[5] Defense counsel argued that the drugs in Fleming's possession were for personal use and were not for distribution or part of a larger conspiracy.

9

*Mouzone*, 687 F.3d at 214 (emphasis added). Fleming has not shown that these slight weight discrepancies swayed the jury. Accordingly, the Court will deny Fleming's claim of ineffective assistance of counsel.

    C. Claim for Relief under *Alleyne*

    In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013), the Court applied *Apprendi* to mandatory minimum sentences. The Court held "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."

    The Supreme Court decided *Alleyne* after Fleming's trial and sentence. A new rule is retroactive only if it is a "watershed rule of criminal procedure"[6] and implicates "the fundamental fairness and accuracy of the criminal proceeding."[7] After *Apprendi*, courts routinely held that it was not a watershed rule requiring retroactive effect. *See, e.g., United States v.*

---

[6] *Teague v. Lane*, 489 U.S. 288, 311 (1989).

[7] *Saffle v. Parks*, 494 U.S. 484, 495 (1990).

*Sanders*, 247 F.3d 139, 147 (4th Cir. 2001). Courts have applied this same reasoning to *Alleyne*. *See Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *United States v. Stewart*, 2013 WL 5397401, at *1 n.1 (4th Cir. 2013) (unpublished opinion); *Muhammad v. Purdue*, No. 5:12CV129, 2013 WL 4508870 at * 4 (N.D. W. Va. 2013). Accordingly, *Alleyne* does not apply retroactively to Fleming's conviction and sentence.

Even if *Alleyne* did apply, Fleming's argument would fail because the murder he committed did not increase the maximum sentence he faced. Before trial, the government gave notice that it would seek sentencing enhancements under 21 U.S.C. §§ 841(a)(1) and § 851. Fleming was informed that if he was found guilty of the drug offenses he would face a mandatory minimum of 20 years and a maximum of life imprisonment. ECF No. 907. When the jury returned its verdict, it not only found Fleming guilty of the two drug offences, it also made specific factual findings about the weight of the drugs. Thus, the jury found beyond a reasonable doubt that Fleming possessed and conspired to distribute 50 or more grams of cocaine basis. This was a sufficient factual finding to trigger the sentencing enhancements, and Fleming's sentence was within these enhancements. Accordingly, Fleming's sentence does not offend *Alleyne*.

D. Certificate of Appealability

A certificate of appealability ("COA") must issue before a petitioner may appeal the court's decision in a § 2255 case. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotation marks omitted). Denial of a COA does not prevent the petitioner from seeking permission from the Court of Appeals to file a successive petition or pursuing his claims upon receipt of such permission.

Because Fleming has not made a substantial showing of the denial of his constitutional rights, the Court will not issue a COA.

III. Conclusion

For the reasons stated above, Fleming's motion to vacate under 28 U.S.C. § 2255 will be denied.  Fleming's first motion to amend will be granted; his second motion will be denied as moot; and, his third motion will be denied .

_6/22/15_
Date

_____
William D. Quarles, Jr.
United States District Judge